We will hear argument next in Maiorino v. Kijakazi. Mr. Maiorino, you may proceed.  Please bear with me. I'm representing myself, so please excuse my emotions. I had open heart surgery on November 29, 2013. I had a psychic break in the hospital and I lost senses of my mental stability. And I filed for disability and I was denied. And this case, as you can see, has been going on for quite some time. I was misrepresented at the LJ hearing. They didn't take into consideration the doctor's mental assessment of my condition. And then the lawyer decided to not take the case further at that point. So I got another attorney and I had an assessment done from a private doctor that the attorney paid for, which they forgot to put in my appeals decision when I filed an appeal against the LJ's decision. They just left it out. They neglected my mental assessment from the doctor that they paid for. And as of that day, which was in 2007, 2016, I've been seeing the same therapist, doctor, for my mental condition ever since that day. Which I had put in a motion to supplement the record as recently, which was the doctor's progress report for the last five years that I've been seeing him about my condition. I'm on four different types of psychotropic drugs. The LJ had spoken, and please excuse me if I bounce around. I really don't know what I'm doing. It says, from what I can understand, that the LJ is supposed to take the primary doctor's recommendation into consideration over the examining doctor, which I think was some doctor that was in Pennsylvania on the telephone. But what I'm confessing is that my attorneys were negligent by not presenting the court with the proper facts about my mental condition. And I think they focused more on my physical condition opposed to my mental condition. And then the judge also said that because I flew back to New York to take care of my elderly father was a reason why I could work. I took care of my father for eight years until he passed away in 2020. And he was the only reason why I survived that lived, because he supported me. And he died right when COVID hit. And he's my father. It didn't matter. I was going to go take care of him. If he needed me, I was going to take care of him. And he left me when I was two years old. So, I've been fighting this for a long time. I'm going to be 64 years old. I just want what's due to me. My Social Security is practically nothing. And if I don't get this, I basically will probably be homeless and just be moved on to the next step because I don't know how much more I can take emotionally. Physically, I got COVID a couple of weeks ago. I thought I was going to die because my chest was exploding. And I went to the hospital. But I figured I have nothing to lose. I figured I'd just bring this to your honors. And you can make your decision based on what you see in the records. You probably see more than I see. The case must have been brought down for some reason that they've seen in the brief that was submitted in November of 2019 where I got the doctor's original report submitted with ineffectiveness of counsel. So, I come to the court pleading to see this for what it's truly worth and help me to get on with the last end of my life, which I don't believe is really that much more because I just feel like I feel destitute ever since my heart surgery. I don't feel like a whole human being anymore. And I have to take all kinds of medication just to feel stable. I go to AA because it's the only place I can go where people can talk about this stuff going on. I can't get a regular job. We do have an extensive criminal history from a long, long, long time ago. It's never going to change. And I always say that to the fact that it's in the record. You guys know who I am, when I am, what's going on. As I said, this is my case. And if there's any questions you have for me, I can answer them to the best of my ability. And I just thank you so much for allowing me to come down here and be able to present this to you. And I hope you see it for what it's worth. That's all I have to say. Thank you, sir. We have a little bit of time left. If you want, you can have a seat. We'll hear from the government and then go if you want to use the rest of your time to respond to anything they say. Thank you. Ms. Larkin. Good morning. May it please the Court, my name is Margaret Larkin on behalf of the Acting Commissioner. Claimant raises several issues not properly before this Court. The Commissioner requests that those issues not raised below be deemed waived. Claimant was represented by counsel in both the administrative hearing and before the District Court. With respect to the Step 2 issue, the Commissioner notes that Claimant originally filed for disability benefits, alleging he was unable to work because of a heart condition and other physical impairments, and not because of any mental impairments. When he requested reconsideration of his claim after the initial denial, he also did not allege disability based on any mental impairment. The relevant period in this case is approximately 30 months from December 2013 through May of 2016. The record contains five appointments specifically for mental health treatment. Excuse me. That span a five-month period of time. Those records are most... The key issue here, and the key issue that the ALJ, as you can see in your brief, made a clear mistake in weighing what seems to be the key item of evidence in Mr. Margarito's favor. So why don't you focus on that issue and why we shouldn't send it back. Yes. Thank you, Your Honor. We conceded in our brief that the ALJ did not acknowledge the other four medical appointments with Dr. Yadagiri for his, that were mental treatment appointments. It was not that he didn't recognize the other four. He did not appreciate that he went to that doctor not just for back issues. He seemed to think that there was no treatment relationship with respect to mental issues at all, which also seems to be the second mistake. Yes, that's correct as well. Our position is that in reviewing those records, it wouldn't change the outcome of the ALJ's decision. Those records, as I said, there are five appointments. The first one is intake. That is largely subjective statements, and it's unsigned. The remaining appointments are for medication management, and they include mental status examinations from Dr. Yadagiri that reflect mostly normal findings. And as the court knows, the mental status examination is the objective portion of a mental treatment note. By the last appointment. Don't those notes indicate that the claimant was markedly impaired in his concentration and persistence, his memory, and his ability to adapt to workplace changes? I'm looking at the SCR 642. And don't his notes indicate that he was experiencing depressive symptoms five hours a day and was also struggling with anxiety and insomnia? And I'm looking at SCR 650, 652, and 654. Doesn't that support his opinion that the claimant was markedly impaired in many areas of his mental functioning? We miss more than three days of work every month. Well, the portion that reflects that he's markedly limited in certain mental activities is the medical source statement from Dr. Yadagiri. That's what I'm talking about, yes. That's the one that Judge Collins pointed out, that the ALJ mischaracterized the number of visits. Well, it's our... And you're saying it was harmless because it wouldn't have made any difference, but his notes sort of suggest that it supported the claimant's position. Well, I think there's a distinction... There are notes from other doctors, including his cardiologist, that he had severe depression and daily weeping spells. Thank you, Your Honor. There is a distinction between the medical source statement filled out by the treating doctor and then the treatment notes that would support that medical source statement. And it's our position that the treatment notes don't support the medical source statement. And even on the day that the medical source statement was filled out, that reflected marked limitations, the doctor's actual treatment note that was from January 5th, 2016, says, Plaintiff is, excuse me, patient is stable, anxiety is controlled, sleeping well, no suicide ideation, the mental status examination... Can I ask you about the particular notes you're reading from there? Because if I'm reading this correctly, and tell me if I'm wrong, that note that says he's stable, anxiety is controlled, sleeping well, was written by the same person on the same day as the check the box report on 642 that has, you know, about 10 marked limitations listed. Am I reading this correctly? That's correct, Your Honor. So our position is, you know, despite the fact that the ALJ did not acknowledge those medication management treatment notes from Dr. Yadagiri, the error would be harmless because the medical treatment notes don't support the functional, the medical source statement. With respect to other evidence from claimant's cardiologist and internal medicine doctor, the ALJ discusses evidence showing that claimant's mental symptoms have improved with medication from those statements from those other doctors. So the ALJ notes, and this is on 589, Dr. Sima notes that the fatigue and depression remain resolved. Dr. Friedman, his cardiologist in New York, on page 634 says that after he was put on Lexapro for depression, he states, he says, the claimant says he's feeling much better. Can I ask you about one comment the ALJ made on page 30 of the record? It may be that there's an internal inconsistency between the treatment notes and the overall assessment form that were completed on the same day. But at the same time, in light of the two errors you've conceded, that he didn't realize that Dr. Yadagiri treated him for mental conditions, and he didn't realize that there were all these other visits. What the ALJ says is the mental health assessment from Dr. Yadagiri is given no weight whatsoever. But he understands a pretty strong judgment that, frankly, I've not seen in a lot of ALJ decisions. Doesn't that suggest that ALJ may need to take another look at it? It may be that the answer comes out the same way on remand, but it's not for us to reweigh it, and he just threw this in the trash, and that he wasn't allowed to do. Well, no, I don't think that it would be beneficial to send this case back for the ALJ to relook at those records. The medical record in this case simply doesn't support Dr. Yadagiri's extreme opinion. And I would urge the court to apply a harmless error to the ALJ's decision. There's just not evidence that would support market limitations in mental functioning. There's five months of very sparse mental treatment notes that are mainly for medication, and don't contain abnormal objective findings. There are some isolated abnormal mental findings in the record, but as the ALJ noted, plaintiff's subjective complaints appear to be controlled with medications. And there's no explanation for why he stopped going to mental treatment after January of 2016, except that that note from Dr. Yadagiri says he's stable and doing well. So I don't think that the ALJ needs to look at these very sparse records again. The medical source statement is simply just not supportive. It's so extreme. I think, you know, claimant has the burden of proof at step two. The medical record's in control here, and it supports ALJ's step two finding. And can you, what's your understanding of the standard for harmless error that we apply here? If the error would not change the outcome of the decision. Is there a preponderance? Do we have to say that there's no way that the ALJ could possibly have reached a different decision? The standard of review is substantial evidence. So reasonable minds could disagree on how the ALJ, you know, on the step two finding, and whether the evidence, if substantial evidence exists in the record as a whole, then they. But where the ALJ hasn't really made, I mean, this is, as Judge Collins pointed out, the ALJ didn't make, I mean, he made a finding at some high level of generality, but he didn't make the finding that you're saying he could have made. So by what standard do we have to conclude that he would have made that finding? Have you understood the record correctly? The standard, as far as I understand, it's substantial evidence review. If there's no, you know, more specific review, standard of review for harmless error. Right. Thank you, counsel. Mr. Mayorino, you have a little more time if there's anything you want to say in response to the government. I see that everybody was discussing Dr. Yadigari, who is still my physician today, and still has me on psychotropic drugs. And my condition worsened after the first LJ hearing, and they decided for me to go see another doctor who was a professional. And Dr. Reynolds was the one who did the workup on me, which the lawyer did not present in my case. They did not submit that. They paid to have a doctor do a psychiatric report on me that I saw five specific times. But the lawyer never submitted it with the appeal. Then later on, when it went to the district court, I was not allowed to submit new evidence. So the lawyer took himself off my case and left me with nobody to work for me. I couldn't find a lawyer. No lawyer would take my case unless I was an illegal immigrant. As an American citizen, a lawyer would not take my case for any amount of money, anything. I had no money anyway, but they just wouldn't take my case. No law school, no university. I called them all. So I started seeing the doctor on a steady basis. And from that day on, from 2016 to now, I've been seeing the same doctor under the same drugs. And the older I get, the more emotionally unstable I get. So I notice that everything that's being discussed is about the LJ. And the LJ actually, I truly believe, didn't take my doctor's report for what it was truly worth. But I don't hear anything about the doctor's report after that and my condition, how it works after that, to my appeal to your court. And I guess which might have brought me here. I don't really know why it brought me here, but for some reason, you guys wanted me to be here for something. Because you could have just denied my case by letter like you did the last four or five or six times. And I submitted the motion with the supplement so you guys can see that I've been in treatment by a professional doctor for my mental condition. And I think the Social Security submitted a rebuttal to my motion to supplement. And everything that they said in there, if you can read it, is totally untrue. Because they did not take my mental condition into consideration, even at the LJ hearing. So like I said, I don't know where I'm supposed to go with this. I'm not an attorney, so I don't know if I'm supposed to say anything to the government or not. But this is my case. This is the last of what I have to say. But I didn't hear anything about the treatment that I've been in. Because the case, I've gotten worse. Not better, worse. I'm getting older, I'm getting worse. And none of that has been addressed at all. Which, I just wanted to bring that up. And I don't know if I'm allowed to bring it up. But I just wanted to bring that up that I didn't hear none of that discussed. But I did notice that some of the judges were in agreement with me about the LJ hearing not being correct. That they did disregard what was actually done. And I'm just saying I wasn't represented properly from the beginning. And until this last appeal, I just wanted to get into record that I have been in treatment. Treatment has been there. And it's been there even before that. So, thank you for letting me speak again, Your Honor. Thank you, sir. We thank you and the government for the helpful arguments this morning. The case will be submitted for decision.
judges: MILLER, COLLINS, Korman